Lamaar Deangelo KENNEDY,
Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

NO. 2014–CA–001911–MR

Court of Appeals of Kentucky.

RENDERED: APRIL 15, 2016; 10:00 A.M.

Brief for Appellant: Steven J. Buck, Assistant Public Advocate, Frankfort, Kentucky.

Brief for Appellee: Jack Conway, Attorney General of Kentucky, David W. Barr, Assistant Attorney General, Frankfort, Kentucky.

BEFORE: COMBS, DIXON AND STUMBO, JUDGES.

## OPINION

**STUMBO, JUDGE:**

Lamaar Deangelo Kennedy appeals from a Fayette Circuit Court judgment after entering a plea of guilty to first-degree possession of a controlled substance, conditioned on his right to appeal the denial of his motion to suppress.

The following uncontested facts were elicited at the suppression hearing: Officer Adam Ray was on patrol at around 10:30 p.m. when he stopped a dark green or gray Chrysler 300 near an intersection in Lexington. Officer Ray's reasons for stopping the car were twofold: First, he was unable to read the temporary tag affixed to the inside upper left corner of the vehicle's tinted rear window. Second, the car matched the description of a vehicle that had fled from Officer Derrick Wallace on two separate occasions a month before.

Just before making the stop, Officer Ray requested assistance from other officers. Officers Newman and Terry were in the area and responded. Officer Ray then turned on his emergency lights and pulled over the Chrysler 300 at 10:32 p.m. When he approached the vehicle, he could see that the temporary tag had expired four days before. He observed four people inside the car, one of whom was Kennedy. He told the driver, Marcus Green, that he had stopped him because he could not read the temporary tag, and had just noticed that it was expired. Green gave Officer Ray his driver's license and the bill of sale for the car. Officer Ray asked Green to stay in the car while he returned to his patrol car. Officers Newman and Terry remained near the Chrysler 300.

As Officer Ray sat in his patrol car checking Green's information and writing a citation, Officer Terry walked up and told him that he was familiar with Green, describing him as an active gang member known to carry weapons and narcotics.

Officer Ray directed Terry to call a K–9 unit to the scene, and ordered Green and his passengers to exit the car one by one. He frisked them and made them sit on the curb.

The K–9 unit arrived at 10:41 p.m. The dog gave a positive alert to the presence of narcotics in the car. The officers searched the interior and found cocaine, marijuana and a large amount of cash in $100 bills in a purse belonging to one of the passengers. Officer Ray discovered that Kennedy had an outstanding warrant for his arrest. The police searched Kennedy and found cocaine and $89 in cash.

Kennedy was charged with first-degree trafficking in a controlled substance and being a second-degree persistent felony offender. After his motion to suppress the evidence was denied, he entered a conditional plea of guilty to first-degree possession of a controlled substance and received a sentence of three years. This appeal followed.

> An appellate court's standard of review of the trial court's decision on a motion to suppress requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.

*Commonwealth v. Neal,* 84 S.W.3d 920, 923 (Ky.App.2002) (footnotes omitted).

Kennedy argues that officer Ray did not have reasonable suspicion of criminal activity when he initiated the traffic stop, and should not have detained Kennedy for merely being a passenger in the car. Consequently, he contends, the drugs found on his person were fruit of the poisonous tree.

■■■ " '[S]topping an automobile and detaining its occupants constitute a "seizure" ' under the Fourth Amendment." *Chavies v. Commonwealth,* 354 S.W.3d 103, 108 (Ky.2011) (citing *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (citations omitted)). "Traffic stops are similar to *Terry* stops and must be supported by articulable reasonable suspicion of criminal activity." *Id.* (footnote and citation omitted). In *Terry v. Ohio,* the United States Supreme Court held that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). However, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard[.]" *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citation omitted).

■■ Kennedy argues that Officer Ray did not have a reasonable suspicion of criminal activity to initiate the traffic stop because the manner in which the temporary tag was displayed in Green's vehicle did not violate any criminal statutes.

Kentucky Revised Statutes (KRS) 186.170(1) sets forth the requirements for the display of motor vehicle registration plates and provides that plates shall be kept legible at all times, and that the rear plate shall be illuminated during nighttime hours. The statute does not, however, make any reference to specific display requirements for "temporary tags." Temporary motor vehicle registration is governed by KRS 186A.100 and 186A.105, but these statutes do not set forth specific display requirements for temporary tags.

In denying Kennedy's suppression motion, the trial court held that the display requirements of KRS 186.170(1) do apply

to temporary tags, and that the traffic stop was proper because Green's tag was not legible.

As the proper interpretation of a statute is purely a legal issue, our review is *de novo*. *Commonwealth v. Long*, 118 S.W.3d 178, 181 (Ky.App.2003) (citations omitted). "Our ultimate goal when reviewing and applying statutes is to give effect to the intent of the General Assembly. We derive that intent from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Commonwealth v. Wright*, 415 S.W.3d 606, 609 (Ky. 2013) (citing *Osborne v. Commonwealth*, 185 S.W.3d 645, 648–49 (Ky.2006)). "We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes." *Wright*, 415 S.W.3d at 609 (citing *Hall v. Hospitality Resources, Inc.*, 276 S.W.3d 775, 784 (Ky.2008)).

Whether the legibility requirement of KRS 186.170(1) applies to temporary tags is a question that has never been addressed by a Kentucky state court, although it was recently addressed in an unpublished opinion of the United States District Court for the Eastern District of Kentucky, in reliance on an opinion of the Sixth Circuit Court of Appeals. *United States v. Locklear*, No. CRIM.A. 13–12–DLB, 2013 WL 4679727, at *3 (E.D.Ky. Aug. 30, 2013) (citing *United States v. Foster*, 65 Fed.Appx. 41 (6th Cir. 2003)).

The reasoning of the District Court, although not binding on this Court, is highly persuasive and comports with the foregoing rules of statutory interpretation. The federal court noted that while no Kentucky statute specifically addresses the display of temporary license plates, no statute exempts temporary license plates from the requirements of KRS 186.170(1), "nor are

Courts free to create exceptions to general statutory requirements." *Locklear* at 3. The opinion concludes that the legislature intended KRS 186.170(1) "to apply to both temporary and permanent license plates. After all, both temporary and permanent license plates share the same function of demonstrating that a vehicle is properly registered, and that function can only be served if both types of plates are legible." *Id.*

Our conclusion that this is the correct interpretation is reinforced by the language of 601 Kentucky Administrative Regulations (KAR) 9:140. The regulation, which governs the issuance and physical appearance of temporary tags, uses the term "temporary registration plates," which strongly suggests that the requirements of KRS 186.170(1) are applicable to temporary tags. "Administrative regulations of any kind which have been duly adopted and properly filed have the full effect of law." *Flying J Travel Plaza v. Com., Transp. Cabinet, Dep't of Highways*, 928 S.W.2d 344, 347 (Ky.1996).

Because the manner in which the temporary tag was displayed in Green's car violated the legibility requirement of KRS 186.70(1), Officer Ray's traffic stop was justified. "[A]n officer who has probable cause to believe a civil traffic violation has occurred may stop a vehicle regardless of his or her subjective motive in doing so." *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky.2001) (footnote and citations omitted).

The Fayette Circuit Court properly denied Kennedy's motion to suppress and consequently its final judgment is affirmed.

ALL CONCUR.